PEOPLE'S LOAN AND BUILDING ASSOCIATION OF RICHMOND,

*vs.*

BENJAMIN WHITMORE.

Sagadahoc.    Opinion April 30, 1883.

*Forcible entry and detainer.    Landlord and tenant.    Duress.    Evidence.*

In a process of forcible entry and detainer regularly commenced, proof that the respondent two years prior to the date of the process took a lease of the premises in question from the complainants, under which lease he had possession and paid rent, and that he continued in possession after the term had expired, and that, rent having accrued and remaining unpaid, he received from them the notice required by statute to terminate his tenancy more than thirty days before the commencement of the process, together with proof identifying the premises and parties, will make a *prima facie* case for the plaintiffs.

Where a tenant claims the right to contest his landlord's title on the ground that he was induced to take the lease by fraud and duress, proof of the

tenant's title to the property in controversy, is not admissible upon that question, when there is no testimony that anything was said or done by the landlord, or any one acting in his behalf, which would constitute fraud or duress in the negotiation for the lease.

ON REPORT.

The opinion states the case and material facts.

*J. W. Spaulding* and *F. J. Buker*, for the plaintiffs.

*W. Gilbert*, for the defendant, in an able argument contended that the lease was procured by fraud and duress, because the tenant was in possession when the officer went there in haying time with a writ of possession running against the defendant's son, and in favor of the plaintiffs, and put the plaintiffs' agent in possession, and thus induced the defendant to take a lease. In view of this transaction the actual relations of the several parties to the estate is of vital importance in the evidence bearing upon the question of fraud or duress. For if the plaintiffs had a title, though imperfect, and the defendant a mere usurper, holding possession against the apparent right of plaintiffs, the jury would justly view the evidence of artifice and coercion in a much less unfavorable light than they would in the absence of such circumstances.

But if the defendant had a good title, while the plaintiffs without title employed artifice and coercion to enforce him to a surrender of his estate, and estop himself to assert his title ever after, a competent jury would require very little evidence of compulsion to enable themselves to protect the lord of the domain against the encroachments of the usurper.

This was precisely the exigency at the trial. The deeds excluded show that the defendant had a good title. . . . It is respectfully and solemnly submitted, therefore, that all of these deeds should have been admitted for their very important and essential bearing on the question of duress or unlawful coercion.

Upon the question of the application of the rule that the tenant shall not be permitted to dispute his landlord's title, counsel cited: *Boston* v. *Binney*, 11 Pick. 1; *Heath* v. *Williams.* 25

Maine, 209; *Ryder* ·v. *Mansell*, 66 Maine, 167; *Lamson* v. *Clarkson*, 113 Mass. 348.

BARROWS, J. This is a process of forcible entry and detainer, commenced by the complainants July 28, 1881, against the respondent, who became their tenant of the premises under a lease, dated July 10, 1879, at which time the complainants were put in possession by an officer having a writ of possession in their favor, against William G. Whitmore, the son of the respondent. The respondent paid one year's rent, according to the lease, or, until July, 1880, but not afterwards, and although the lease had expired he never surrendered the premises to the complainants, and thereupon had due notice to quit June 25, 1881, more than thirty days before the commencement of this process.

The defendant having executed this lease under seal, and held possession of the premises, and paid rent agreeably to its provisions, is justly estopped from disputing his landlord's title, and setting up one of his own, until he has surrendered the possession which he has held under a solemn admission that he was *not* the owner, and that the lessor *was*, unless he can show that he was induced to execute the lease by some wrongful practice on the part of the lessors, such as amounts to fraud or duress, or, unless the title he offers to show, comes within some exception to the general rule, as was the case in *Ryder* v. *Mansell*, 66 Maine, 170. But when the parties came before the jury, and the plaintiffs had made out a *prima facie* case by proof of the facts above recited, and the identity of the premises, it appears by the report that a protracted examination failed to elicit from the defendant, or his witnesses, anything upon which to base the charge of fraud, or duress practiced by the plaintiffs, or any person acting in their behalf. The defence upon these points broke down entirely, and the defendant, as well he might, consented to a default with leave to report the case to this court for the determination of the questions, whether the plaintiffs had made out a *prima facie* case, and whether the evidence of title in himself, which he offered, was rightly excluded, or whether it ought to have been received

as coming within some exception to the general rule, like *Ryder* v. *Mansell,* or for any other good reason.

A careful examination of the testimony shows that no devices were practised, nor representations made by any agent of the plaintiffs, either as to the goodness of their title, or in any other respect. The defendant acted on his own knowledge and judgment, so that there was no room for any pretence of fraud. As to knowledge of the title the parties either stood on equal grounds, or the defendant had the advantage.

What will, and what will not, constitute duress so as to avoid a contract on that account, has been sufficiently discussed by the court in this state, in *Crowell* v. *Gleason*, 10 Maine, 325 ; *Fellows* v. *Fayette*, 39 Maine, 559 ; *Harmon* v. *Harmon*, 61 Maine, 227, and *Seymour* v. *Prescott*, 69 Maine, 376, to make reiteration in the present case impertinent, as it is obvious that there was no element of duress in anything said or done by, or in behalf, of the plaintiffs, in the taking of this lease — nothing in the circumstances, or the situation, to "shake a mind of ordinary firmness." There was no harsh language, no imprisonment, actual or threatened, no threat of anything, unless the assertion that the defendant would have to leave the premises without any fixing of the time when he would be required to do so, should be so construed. The business was deliberately transacted, and defendant says : "After I had thought of it a long spell, I was afraid he *could* turn me out," and so the lease was executed. Upon the defendant's own version of the transaction there was no evidence of fraud or duress. The single remaining question for the court now is, whether the title in himself, which the defendant offered to show, was competent evidence upon any branch of the case in defence of the action.

Defendant's counsel argues that it was competent on the questions of fraud and duress, because, he says, "if defendant had a good title, while plaintiffs without title employed artifice and coercion to force him to a surrender of his estate, and estop himself to assert his title ever after, a competent jury would require very little evidence of compulsion to enable themselves to protect the lord of the domain against the encroachments of a

usurper." In briefer terms, the jury are to be asked to find fraud and duress upon little or no evidence, if it is made to appear that the defendant is right upon the question of title. This convenient style of reasoning would effectually dispose of the estoppel in all cases. The jury are to infer fraud or duress from proof that the defendant had the better title, and no real occasion to take a lease and create an estoppel.

No legitimate inference of fraud or duress which should avoid the effect of the lease, can be drawn from such proof. Since the parties to contracts and suits are witnesses, the means cannot be wanting of giving direct proof of fraud or duress if any has been practised. When no such proof is offered, the want of it is not supplied by showing that the opposite party may have had a motive to do that which it does not appear that he in fact did. . Moreover, counsel seems to misapprehend the nature and effect of the estoppel which the law creates. If the lessee really has a title which he could make good against the lessor, the law is not so unreasonable as to "force him to a surrender of his estate, and estop himself to assert his title ever after." It only requires him to do what he solemnly agreed under his hand and seal to do, *i. e.* to surrender the possession to his lessor at the end of his term, or such later period as the parties may fix, and to assume the burden himself, in any controversy that may arise about the title, instead of availing himself of the advantages of possession. To admit the evidence of the defendant's title under the pretext that it is competent upon the question of fraud or duress, would be in effect to relieve the defendant from the duty which the law imposes upon him of performing his own solemn agreement.

It remains only to inquire whether the character of the title which the defendant offered to show, was such as to make the case an exception to the ordinary rule. The plaintiffs offered no evidence as to title. But the mortgage of William G. Whitmore, the respondent's son, to them, was referred to in the lease which the respondent took, and necessarily came in for the purpose of explanation and identification. It thus incidentally appears that whatever title the son had at the date of the mortgage (and by reason of his warranty to them, any which he

might subsequently acquire would inure to their benefit), was in the plaintiffs. Looking now at the evidence of title in the respondent which was excluded, it is obvious that he could not present against his landlord the title he acquired by the deed of the premises to himself in 1839, for it is only a title acquired subsequently to the lease that could be admitted. The only other conveyance to himself offered, was the deed from the same son, William G. Whitmore, whose title the plaintiffs held under a previous conveyance with full covenants of warranty, and against whom they had a writ of possession, which being put into the case with the consent of both parties, may fairly be presumed to have been issued upon a valid judgment.

The radical difference between such a title as this, and that which the respondent was allowed to set up in *Ryder* v. *Mansell*, 66 Maine, 167 (in connection with records, which showed in that case that the landlord's title had expired after the giving of the lease), is apparent at a glance. *Here*, there is no attempt to show that the landlord's title had expired, or been in any manner vacated or transferred after the giving of the lease, but the effort, apparently, is to set up an adverse title, which arose before the lease and before the mortgages to the plaintiffs.

It is not a case of the determination of the landlord's title, or of the acquisition of it, by himself, that the respondent proposes to establish. Nor is it the case of a tenant in possession and not entering under the landlord, for the record shows the plaintiffs receiving possession from an officer of the law, and the tenant receiving it from them the same day. It is not the case of a tenant in possession attorning to a stranger. It bears no resemblance to any of the cases to which the rule of estoppel has been held not to apply.

The history of the case, as it may well be inferred from the order of events and the admissions of the respondent on cross-examination, develops a subtle attempt to defraud the plaintiffs by setting up, in the absence of their warrantor, the respondent's son, a title under the mortgages given to N. M. Whitmore, in 1871 and 1873, although the respondent was apparently cognizant throughout of the course of proceedings, and testifies explicitly

that he had received a deed from his son of his son's interest, before the plaintiffs obtained their writ of possession against the son. In any event it was no such subsequently acquired interest as the respondent could be permitted to assert in this suit when he has never surrendered the possession to his landlords as required by his lease.

*Judgment for plaintiffs.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.